```
1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF VIRGINIA
2                       Charlottesville Division

3

4    UNITED STATES OF AMERICA,        Criminal No. 3:13cr00015

5                    vs.              Charlottesville, Virginia

6    GETTY ANDREW ROTHENBERG,

7                       Defendant.    January 17, 2014

8
                     TRANSCRIPT OF SENTENCING HEARING
9              BEFORE THE HONORABLE GLEN E. CONRAD
                     UNITED STATES DISTRICT JUDGE
10

11
     APPEARANCES:
12
     For the United States:
13                                     U.S. Attorney's Office
                                       TIMOTHY J. HEAPHY
14                                     310 First St., S.W.
                                       Room 906
15                                     Roanoke, VA  24008

16
     For the Defendant:
17                                     Gentry Locke Rakes & Moore
                                       THOMAS J. BONDURANT, JR.
18                                     10 Franklin Rd., S.E.
                                       Roanoke, VA  24022
19
     Court Reporter:                   Sonia R. Ferris, RPR
20                                     U.S. Court Reporter
                                       116 N. Main St.  Room 314
21                                     Harrisonburg, VA 22802
                                       540.434.3181 Ext. 6
22

23

24

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

1          THE COURT:  Good morning.

2          I'll ask Ms. Moody to announce the style of

3    today's first case.

4          THE CLERK:  United States of America vs.

5    Getty Andrew Rothenberg, Criminal Action 3:13cr15, for

6    sentencing.

7          THE COURT:  The record of the Court reflects

8    that Mr. Rothenberg was previously before the Court and

9    made a plea of guilty to Count one of a criminal

10   information charging wire fraud, in violation of 18

11   U.S.C. Section 1343.

12          Following acceptance of the guilty plea, the

13   Court referred this matter to the United States

14   Probation Service for the development of a pre-sentence

15   report designed to help the Court get to know Mr.

16   Rothenberg better, to find out, as I always say, some of

17   the good things about his history, about his background

18   in the face of criminal allegations as set forth in the

19   information.  Also, the pre-sentence report is designed

20   to help the Court decide whether to approve the plea

21   agreement pursuant to which the defendant made his plea

22   of guilty.  And then finally, the Court utilizes the

23   pre-sentence report in an effort to properly apply the

24   Advisory Sentencing Guidelines that the Court must

25   consider before announcing some disposition.

1          The pre-sentence report has been completed

2    in Mr. Rothenberg's case. The Court has had the

3    opportunity to review it on several occasions now.  I

4    suspect that counsel have as well.

5          Mr. Bondurant, I would imagine that you have

6    shared the report with the client and discussed it with

7    him before we convened today.

8          MR. BONDURANT:  Yes, sir, I have.

9          THE COURT:  Mr. Rothenberg, do you feel that

10   you've had an adequate opportunity to review the

11   pre-sentence report in your case and to discuss this

12   matter with your attorneys?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Good.  Then we're ready to

15   proceed with the sentencing hearing.

16         You gentlemen may be seated.

17         The first order of business will be to

18   determine if either side has objections to the

19   pre-sentence report as written.

20         I would note at the beginning of this

21   discussion that since the pre-sentence report has been

22   completed, it is the Court's understanding that the

23   parties have met and agreed on certain of the facts that

24   might have otherwise been in dispute in this case and

25   would urge the Court to modify the pre-sentence report

1  pursuant to their agreement.

2          It's also the Court's understanding that the

3  parties have agreed to jointly recommend a sentence to

4  the Court.  I would further report that at an earlier

5  hearing, the Court announced that it felt that it could

6  live with the party's sentencing recommendation.

7          So, in light of that and before I call upon

8  the parties for comments regarding the pre-sentence

9  report, it is the Court's belief that pursuant to the

10  agreement that I have referenced, the parties would now

11  have the Court modify the pre-sentence report to reflect

12  a total loss of between 1 million -- more than 1

13  million, but less than 2.5 million, rather than the loss

14  amount reflected in the pre-sentence report.

15          Further, the Court believes that the parties

16  have agreed that sentencing guideline paragraph 5K2.10,

17  as well as the general sentencing factors cited by

18  Congress under Section 3553(a) of Title 18, would

19  support both a departure and variance in this case to

20  bring the sentencing range to one within Zone C of the

21  advisory guideline sentencing table.

22          MR. HEAPHY:  Your Honor, if I could just

23  make one clarification. I don't believe it's 5K2.10.

24  It's 5K2.13.  It's the diminished capacity mitigation

25  that we believe is appropriate here.  I don't think we

```
1   had any sort of agreement about victim's conduct.  I
2   would ask the Court to more explicitly find 2.13 as
3   opposed to 2.10.
4            THE COURT:  It was the Court's belief the
5   5K2.10 guideline was the appropriate one to support a
6   departure.
7            MR. BONDURANT:  Yes, sir.  That's the way we
8   understood it when the Court asked us to resolve the
9   case. That's what we've advised our client, too.
10           THE COURT:  I think that's consistent with
11  my recollection as well, Mr. Heaphy.
12           MR. HEAPHY:  Well, Your Honor, I'm just
13  referring to the agreement between the victim and the
14  defendant.
15           THE COURT:  Let's look at it.
16           Again, I believe when I first made the
17  suggestion that the parties might want to consider this
18  issue, I specifically referenced the 5K2.10.
19           MR. HEAPHY:  If I can have just a moment.
20           THE COURT: Sure.
21           (Counsel conferred).
22           I don't know how important it is, the more I
23  think about it.  If everyone agrees the guideline
24  provisions justify a departure to Zone C, I don't know
25  if it's necessary to reference one or the other.  We can
```

1    reference both.

2              MR. BONDURANT:  When we went into the

3    negotiations, we relied on the Court saying the victim's

4    conduct would be a ground for variance and departure.

5    That's what we relied on in our negotiations.

6              THE COURT:  The bottom line is the same, is

7    it not?

8              MR. BONDURANT: It's the same, but we would

9    like to have the Court rely on both or all three.  We

10   gave three separate grounds for departure.

11             THE COURT:  I'll do that. I'll just say that

12   after considering the arguments being made under various

13   guideline provisions and considering the sentencing

14   factors considered by Congress to be important for

15   imposition of criminal sentences in federal proceedings,

16   the Court believes that a departure based on a finding

17   of offense level 13 is appropriate, and effect such a

18   departure.

19             MR. BONDURANT:  Thank you, Judge.

20             THE COURT:  So, I would have the

21   pre-sentence report modified so as to reflect the

22   smaller loss amount and the fact that the evidence in

23   the case supports a departure and a variance to a

24   guideline total offense level of 13, bringing the matter

25   within Zone C of the sentencing table.

1          So, with those modifications having been

2    made, Mr. Heaphy, let me ask.  Are there any additional

3    challenges to the fact findings of the probation officer

4    that you would note on behalf of the United States?

5               MR. HEAPHY:  No, Your Honor.

6               THE COURT:  Mr. Bondurant, any challenges to

7    the fact findings that you would voice on behalf of the

8    defendant?

9               MR. BONDURANT:  No, Your Honor.

10              THE COURT:  Regarding the proposed

11   application of the Advisory Sentencing Guidelines, as

12   modified based on the agreement that I have referenced

13   and in the Court's rulings as to grounds for a departure

14   and variance, Mr. Heaphy, is there any challenge by the

15   United States as to the proposed guideline application

16   that I've announced today?

17              MR. HEAPHY:  No, Your Honor.  I believe that

18   with the revised report, we're at a base offense level

19   20.  We believe that a seven-level variance downward to

20   get us to a 13 is appropriate, for reasons that we'll

21   discuss.  I believe that puts this within Zone C, which

22   makes Mr. Rothenberg eligible for the sentence that we

23   discussed.

24              THE COURT:  A split sentence.

25              MR. HEAPHY:  Yes.

1          THE COURT:  Mr. Bondurant, any challenge to

2    the proposed guideline application that you would make

3    on behalf of the defendant?

4          MR. BONDURANT:  No, Judge.

5          THE COURT:  Mr. Rothenberg, let me address

6    you and tell you that as indicated, I have had the

7    opportunity to receive and review the pre-sentence

8    report in your case.  I've also considered matters that

9    have been brought to the Court's attention by the

10   parties since the time that the pre-sentence report was

11   authored.

12          Based on all the information now available

13   to the Court, it is the Court's finding that the

14   pre-sentence report, especially as it discusses your

15   background, your history, your criminal record, the

16   offense conduct on this occasion, all of these things

17   are accurate.  The only difference, the only

18   modification I would make in terms of the pre-sentence

19   report is to reflect a total loss of between 1 million

20   and 2.5 million. Other than that modification though,

21   the Court is going to adopt the pre-sentence report as

22   written.  I think it does provide a very good and

23   helpful reference for the Court.

24          Furthermore, based on what has been said

25   about you in this report, based on what I've come to

1    understand about your background, your history, your

2    family circumstances, all of which are very positive and

3    favorable, and based on what I've come to understand

4    about the offense conduct and what occurred leading to

5    this criminal prosecution, it is the Court's belief that

6    the plea agreement that you reached with the government

7    is a fair one.  I think it serves your interests in

8    determining exactly what conduct you'll be held

9    responsible for, what loss you'll be held accountable

10   for, and it serves the government's interests in

11   obtaining a conviction in this case without some very

12   expensive, drawn out, protracted prosecution.  It serves

13   the interests of both sides.

14            Accordingly, the Court now adopts the plea

15   agreement and I will attempt to implement that plea

16   agreement in announcing a sentencing in just a moment.

17            Finally, the Court believes that the

18   proposed modified guideline application is correct.

19   Specifically, the Court believes that in your case, we

20   must start with an offense level of 20, based on the

21   amount of the loss, and that for a number of different

22   circumstances, in applying the factors referenced by

23   Congress in Section 3553(a) of Title 18, that a seven

24   offense level downward departure and variance is

25   appropriate in your case.

```
 1              Applying that downward departure and
 2    applying that downward variance, the Court believes that
 3    in your case, your guidelines are appropriately
 4    calculated, giving an offense level of 13 and a Criminal
 5    History Category of I.
 6              Those guideline provisions would result in a
 7    sentencing recommendations of 12 to 18 months; a period
 8    of supervised release to follow -- Mr. Sheffield, of
 9    three years?
10              MR. SHEFFIELD:  Two to five years.
11              THE COURT:  Two to five years; a fine of
12    7500 to $1 million; and in your case, sir, the parties
13    have agreed that you owe restitution in the amount of
14    one and a quarter million dollars to the victim of this
15    crime, as well as a special assessment of $100.
16              I would also note that the Court's
17    assessment of your offense level and criminal history
18    are such as to put you within Zone C of the appropriate
19    sentencing table.  That would result in the possibility
20    of a split sentence for any time ultimately imposed.
21              You gentlemen may be seated.
22              Mr. Bondurant, given these findings by the
23    Court, I ask, is there any evidence in mitigation that
24    you would have the Court consider this morning?
25              MR. BONDURANT:  No, Your Honor.
```

1          THE COURT:  Then I'll call upon the parties

2    for any comments that may need to be made regarding

3    their view of an appropriate disposition.

4          Mr. Heaphy, we'll start with you.

5          MR. HEAPHY:  Thank you very much, Your

6    Honor. I don't have much to say given that we have a

7    joint recommendation to the Court of an 18-month split

8    sentence.

9          We're balancing here the seriousness of this

10   offense which, as detailed at the time of the guilty

11   plea, was significant.  This was a long-running fraud of

12   someone of considerable means that Mr. Rothenberg

13   perpetrated in multiple forms over a long period of

14   time.  So in our view, it is a very serious fraud case.

15   But there are factors here in mitigation.

16          Significantly, the victim's desire here is

17   that Mr. Rothenberg receive treatment as opposed to

18   incarceration and he's been clear about that from the

19   beginning. That is significant to us and one reason why

20   we're asking for a variance.

21          Mr. Rothenberg has also been cooperative.

22   He has met with us and provided information and admitted

23   his role in this fraud.  That also, in our view,

24   justifies the variance.

25          Then finally, there are some mental health

1    issues that I think Mr. Bondurant cited as also

2    justifies a variance.

3             In our calculation then, Your Honor, of this

4    balance of the seriousness and the mitigation, the

5    victim's view and the cooperation, we think an 18-month

6    sentence is appropriate.  It reflects the seriousness,

7    but it also gives Mr. Rothenberg substantial credit from

8    what he would otherwise have faced had this matter gone

9    to trial.  So we specifically ask for 18 months imposed

10   as a split sentence; nine months of active incarceration

11   and nine months in community confinement.

12             THE COURT:  Thank you.

13             Mr. Bondurant, what would you say on behalf

14   of the defendant?

15             MR. BONDURANT:  There again, Your Honor, not

16   much since we have an agreed sentence in this case,

17   split sentence of nine months incarceration and nine

18   months home confinement.

19             As far as the fine goes, I would like to

20   speak to that a second.  It's pretty clear Mr.

21   Rothenberg is without funds at this time.  His wife just

22   gave birth to their second child last week.  That's

23   creating both a financial and emotional toll.  We would

24   ask the Court find he's incapable of paying a fine at

25   this time or at the very least at the lower end of the

1   fine guidelines.  Otherwise, we believe this is a fair

2   result considering all the factors as mentioned by Mr.

3   Heaphy and the other factors the Court said it would

4   rely upon from the bench and we believe this is a fair

5   outcome for Mr. Rothenberg.

6           THE COURT:  Yes, sir.

7           I wonder.  I know that you've agreed to

8   restitution.  Did you also agree to waive interest on

9   the amount that's due and owing?

10          MR. HEAPHY:  I don't have any -- we did not,

11  Your Honor.

12          THE COURT:  Do you have any strong feelings

13  about that, one way or the other?

14          MR. HEAPHY:  I do not.

15          THE COURT:  Normally, I would waive the

16  collection of interest.

17          MR. BONDURANT:  We would, of course, ask for

18  that.

19          THE COURT:  Mr. Rothenberg, let me ask if

20  you will join counsel there at the podium, please, at

21  this time.

22          Mr. Rothenberg, is there anything that you

23  would say on your own behalf before the Court pronounces

24  sentence?

25          THE DEFENDANT:  I'm very sorry for not being

1    as diligent as I could be in my business conducts with

2    Mr. Tinsley.  I was extremely careless in the way I went

3    about doing contractually things with Mr. Tinsley.  I'm

4    very sorry.  I committed wire fraud and I am accepting

5    the -- my responsibility for it.

6            Again, I'm extremely embarrassed to be here.

7    Very sorry to be here.  I accept my punishment and I

8    look forward to getting past this and moving on and

9    being able to support my family and get past this most

10   embarrassing situation so I can get on with my life and

11   look forward to a very energetic life beyond this.

12           I'm determined to not only rebound, to make

13   an amazing entrance to the civilian life and really make

14   a positive impact for the rest of my life.  I'm trying

15   to get the embarrassment behind me and let this

16   situation drift behind me so I can get on to a very

17   impressive life that will impact positively a lot of

18   people, going forward.

19           THE COURT:  Yes, sir.  Yes, sir. I think

20   that's well said.  Your comments, I know, were

21   heartfelt.

22           Mr. Rothenberg, as you've recognized in your

23   statement and as has been pointed out on several

24   occasions during the prosecution of this matter, you did

25   commit a serious crime.  You did commit mail fraud and

```
 1    it resulted in a very substantial loss to the victim.
 2    It was a very wrongful act.  You stole money and you've
 3    admitted responsibility for that.  You've stood up and
 4    said, yes, I'm responsible, I need to be punished, and I
 5    think that all of this speaks in mitigation, though with
 6    the understanding that there is still a very significant
 7    criminal act for which you must now be punished.
 8              When you announced through counsel and with
 9    the concurrence of the United States Attorney at some
10    earlier time that you had reached a resolution of this
11    --
12              THE DEFENDANT:  I'm sorry.  We -- would you
13    repeat that?
14              THE COURT:  Earlier this week when you
15    informed the Court that you and the United States
16    Attorney and your counsel had sat down and reached a
17    resolution of certain of the factual disputes in the
18    case, particularly the amount of loss and particularly
19    any dispute between you as to the punishment that you
20    should serve, I told you that what you were recommending
21    to the Court was within the range that the Court
22    considered to be an appropriate range for your sentence,
23    for your disposition, and I'm going to stand by that.
24    I'm going to adopt the recommendation.  I'm going to
25    approve the recommendation that you and your attorney
```

1   and Mr. Heaphy have made and sentence you pursuant to

2   that agreement.  It seems to me that the sentence that's

3   proposed serves all of the statutory objectives that the

4   Court must consider in a sentencing decision. I think it

5   does, the proposed sentence recognizes the seriousness

6   of the offense. I think it serves to punish you.  I

7   think it serves to compensate the victim.  It sends a

8   message.  It deters others.  It promotes respect for the

9   law. It's consistent with sentences imposed in like

10  situations both in this court and in other courts.

11          So, the bottom line is that the Court

12  believes the recommendation that you have made is well

13  advised.

14          The Court is going to depart in sentencing

15  you, based on the provisions of sentencing guideline

16  paragraphs 5K2.10 and 5K2.13.  Also, I'm going to have

17  the sentencing order reflect that the sentence imposed

18  represents a variance based on the application of the

19  sentencing factors set forth in Section 3553(a) of Title

20  18.

21          I'm going to sentence you to incarceration

22  of 18 months, split between a period of actual

23  incarceration and a period of home confinement enforced

24  as a condition of your supervised release.

25          I'm going to sentence you to a period of

1    supervised release of three years.

2              The Court agrees that with the obligation

3    that you've undertaken to make restitution to the victim

4    to the tune of one and a quarter million dollars, that

5    it's not realistic for you to pay a fine on top of that.

6    I'm going to make a finding under the guideline scheme

7    that you're not capable of paying an additional sum by

8    way of a fine; vary from the guidelines and impose no

9    fine in connection with this conviction.  I am required,

10   though, to impose the $100 special assessment.  It's

11   mandatory and required of all persons convicted of a

12   single felony offense in a United States District Court

13   proceeding.

14             So, Mr. Rothenberg, that is the proposed

15   sentencing structure in your case:  18 months, 9 of

16   which to be served by way of actual incarceration, 9 to

17   be served by way of home confinement; period of

18   supervised release of three years; no fine; restitution

19   in the amount of one and a quarter million dollars, with

20   no interest to accrue on any sums not paid immediately;

21   and then the $100 special assessment.

22             Mr. Heaphy, does the United States challenge

23   the legality or propriety of the proposed sentence?

24             MR. HEAPHY:  No, Your Honor.

25             THE COURT:  Mr. Bondurant, does the

1    defendant challenge the legality or propriety of the

2    proposed sentence?

3              MR. BONDURANT:  No, Your Honor.

4              May I have one moment?

5              THE COURT:  Sure.

6              (Mr. Bondurant conferred with the

7    defendant).

8              MR. BONDURANT:  I'm sorry, Judge.  Go ahead.

9              (The defendant conferred with counsel).

10             THE COURT:  That will be the sentence

11   imposed, Mr. Rothenberg.  In the next several days, the

12   Court will enter a final judgment and commitment order

13   in your case that will read in pertinent part as

14   follows:  Pursuant to the Sentencing Reform Act of 1984

15   and having considered the factors noted in 18 U.S.C.

16   Section 3553(a), and after having consulted the Advisory

17   Sentencing Guidelines, it is the judgment of the Court

18   that the defendant, Getty Andrew Rothenberg, is hereby

19   committed to the custody of the Bureau of Prisons, to be

20   imprisoned for a total term of 18 months. The term of

21   imprisonment will be split between actual incarceration

22   to the tune of nine months and a period of home

23   confinement, home detention, for a period of nine

24   months.

25             Following the period of actual

```
 1   incarceration, the nine-month period, you'll be on
 2   supervised release for a period of three years. There
 3   will be conditions attached to the period of supervised
 4   release.  I'm going to undertake to announce the more
 5   important of these conditions at this time.
 6            It will be necessary when you're released
 7   from prison that you report to the United States
 8   Probation Service in the district in which you propose
 9   to live within 72 hours of the time of your release.
10            Once you're established on supervision, it
11   will be necessary that you comply with a number of
12   mandatory, standard and special conditions of
13   supervision.
14            By way of mandatory conditions, I will
15   require that you not commit another federal, state or
16   local crime; that you not possess or use a controlled
17   substance; that you submit to regular drug testing as
18   administered by the probation officer to make sure that
19   you're free of drug use; that you not possess a firearm,
20   ammunition, destructive device or any other dangerous
21   weapon; and that you cooperate in the collection of a
22   DNA sample.
23            Now, in terms of the standard conditions,
24   I'm not going to read all those. It's a lengthy list.
25   You'll forget them.  I would, at this time, anyway.
```

1    You'll be given a written list of standard conditions

2    when you're taken up on supervision.  The more important

3    of those conditions require that you remain within

4    regular contact with the probation officer and that you

5    notify the probation officer of relevant changes of

6    circumstance in your situation; new home, new job, new

7    family arrangements, whatever.  The probation officer

8    should be kept advised of all significant changes in

9    your life.

10          Then by way of special conditions, I am

11   going to require that you serve nine months under our

12   location monitoring program, nine months home detention,

13   and that you abide by all the program requirements.  It

14   will be necessary -- well, I'm going to leave it to the

15   discretion of the probation officer to decide if you

16   require electronic monitoring in order to enforce your

17   compliance with the conditions of the location

18   monitoring program.  That will be discretionary with the

19   probation officer.

20          In terms of the restrictions, in terms of

21   what you'll be prohibited from doing, you're restricted

22   to your residence at all times during this nine-month

23   period except for employment, education, religious

24   services, medical visits, substance abuse or mental

25   health treatment, attorney visits, court appearances,

1    Court-ordered obligations or any other activities that

2    are approved by the probation officer.  So except for

3    those exceptional visits, those exceptional

4    circumstances, it will be necessary that you stay at

5    home for the nine-month period.  You will be, though,

6    authorized to work if you're able to have regular

7    employment.

8            Now, there's some thought that you might

9    benefit from mental health treatment.  I don't know

10   about that.  We're going to wait and see about your

11   needs when you're released from prison.  The probation

12   officer will undertake to evaluate you at that time.  If

13   it's well advised, we'll require that you participate in

14   a program of mental health treatment as directed by the

15   Court, with the assistance of the probation officer,

16   until such time as you've complied with all the

17   requirements of that program.  We'll make that call

18   later.  If we feel that you need it, then we'll require

19   it as a condition of supervised release.

20           Also by way of special conditions, I'll

21   require that you provide the probation officer with

22   access to any requested financial information; that you

23   not incur new credit charges or open additional lines of

24   credit without the approval of the probation officer.

25           I'm also going to require at the time of

1    your release from prison that the probation officer

2    evaluate you for potential substance abuse treatment.  I

3    don't know that that will be necessary.  We'll decide

4    then.  If it's determined that you would benefit from

5    substance abuse treatment, we'll identify a program that

6    suits your needs and require you to participate in that

7    as well.  If it is required, it will be necessary that

8    you fully comply with the requirements of that program

9    as a condition of supervised release.

10          I'll require that you reside in a residence

11   free of firearms, ammunition, destructive devices and

12   dangerous weapons and that you submit to warrantless

13   search and seizure of person and property, as directed

14   by the probation officer, to make sure that you're free

15   of contraband during this period of your supervision.

16          Now, in terms of your financial obligations,

17   the Court has ruled that you do not have the capacity to

18   pay a fine.  I'm varying from the guidelines and

19   ordering that no fine be collected from you.

20          The Court is going to order, pursuant to

21   your agreement with the government and the defendant,

22   that you make restitution to the victim of this crime in

23   the amount of $1.25 million.  I'm also going to require

24   that you pay the special assessment of $100.

25          The Court will order that interest on the

1    1.25 million is waived.

2            Since the time that you've reached an

3    agreement on the restitution, more time has passed than

4    can be accommodated by the agreement that you've

5    reached, so is there some new time frame over which you

6    anticipate Mr. Rothenberg will pay restitution,

7    gentlemen?

8            MR. BONDURANT:  I've actually talked to Mr.

9    Treakle.  He and I will sit down and come up with a new

10   timeline and we'll let the Court know when we do that.

11           THE COURT:  Can you do so soon, because it

12   needs to be reflected in the final judgment order?

13           MR. BONDURANT:  We'll do it the first of the

14   week.

15           THE COURT:  So, restitution, one and a

16   quarter million dollars.

17           Having considered your ability to pay this

18   sum, the Court will order that you discharge your

19   financial obligations in the following fashion.  The

20   $100 special assessment should be paid today.  To the

21   extent it cannot be paid today, we'll let you pay it

22   within 60 days.

23           As to the restitution, it is contemplated

24   that you will transfer your interest in the Towne and

25   Country and Cowboyd Holding Companies to the victim,

1    with the understanding that the parties have agreed that

2    these assets carry a value of $200,000.

3              You will also pay the victim $100,000 in

4    cash, 30,000 of which will be paid immediately and the

5    remaining payments of 35,000 to be made at dates

6    certain, to be provided to the Court after consultation

7    with the victim's counsel and your attorney.

8              Then as to the balance, the Court will order

9    that you pay the victim 20 percent of your monthly gross

10   income or $100 per month, whichever is greater, to

11   commence 60 days after release from imprisonment.

12             Are there any other sentencing provisions

13   that the United States would recommend, Mr. Heaphy?

14             MR. HEAPHY:  I don't believe so, no, Your

15   Honor.

16             THE COURT:  Mr. Sheffield, anything else you

17   can think of that should be done in Mr. Rothenberg's

18   case?

19             MR. SHEFFIELD:  Your Honor, the only

20   recommendation I would have is for him to be evaluated

21   for mental health issues while he's incarcerated, should

22   he need treatment.

23             THE COURT:  I think they'll do that and

24   you'll be armed with that information when he's released

25   and you can decide at that point, after you and I talk,

```
 1    as to whether or not anything else is necessary.
 2              MR. SHEFFIELD:  Yes, sir.
 3              THE COURT: Mr. Bondurant, any challenge to
 4    the conditions announced, any additional conditions
 5    you'd have the Court consider, any question as to what's
 6    necessary for compliance?
 7              MR. BONDURANT:  No, Your Honor.
 8              THE COURT:  Do you have a place of
 9    incarceration in mind? With nine months, he's not going
10    to have too much by way of choice, but I'll make any
11    recommendation that you want me to.
12              MR. BONDURANT:  Yes, sir. We'd like to ask
13    for the satellite camp within Petersburg.  It's within
14    close range of his home in Richmond and he just had a
15    new child.
16              THE COURT:  We'll make a recommendation.
17              MR. BONDURANT:  I'd also ask he be allowed
18    to self-report, March 1st.  I've spoken to Mr. Heaphy. I
19    don't believe there's an objection to that.
20              MR. HEAPHY:  I think that's a BOP decision
21    and I don't have any problem with it.
22              THE COURT:  You don't have any problem with
23    him self-reporting.
24              The date, though, is something neither one
25    of us controls.
```

1          We'll have the Court order reflect that Mr.

2    Rothenberg will be able to self-report.

3          Sir, it will be necessary for you to comply

4    with the instructions given to you by the Marshal

5    Service.  The Marshal Service will contact you and tell

6    you when and where you're expected to report.  Be sure

7    you do so on time and I'll have the Court order reflect

8    that we don't contemplate that you'll be required to

9    report prior to March 1, 2014.  It will be some time

10   after that.

11         Now, Mr. Rothenberg, I take to heart the

12   things that you said when you made your statement a few

13   moments ago.  You want to get about the process of

14   putting this behind you and rebuilding your life.  I

15   think that this sentence is conducive to that course of

16   action.  You're going to serve a short period of

17   incarceration, though I think it's a period of

18   incarceration that meets all the statutory requirements.

19   I think it serves all the elements Congress has

20   considered to be important for the Court to evaluate in

21   terms of criminal dispositions. But it's a sentence

22   that's not so long as to prevent you from attaining

23   these goals that you've expressed, these goals you've

24   set out for yourself.

25         My hope is that you'll be able to serve this

1    time without incident, that you'll do well on supervised

2    release and that you'll be very successful in building a

3    new life for your wife and family, in the years to come.

4    Based on what I've come to learn about you, what has

5    been said about you in the pre-sentence report, it seems

6    that this is a very realistic goal and I'm convinced

7    that you'll achieve it.

8              Mr. Rothenberg, you have waived the right to

9    appeal your sentence by virtue of your plea agreement

10   and that waiver is binding unless the sentence exceeds

11   the statutory maximum or is based on some

12   constitutionally impermissible factor.  If you undertake

13   to appeal despite your waiver, you may lose the benefits

14   of your plea agreement.

15             To the extent a right of appeal does exist,

16   I tell you a person unable to pay the cost of appeal may

17   apply for leave to appeal without pre-payment of that

18   cost.

19             Any notice of appeal must be filed within

20   14 days of the date of entry of judgment of conviction

21   or within 14 days of a notice of appeal filed by the

22   United States.

23             If requested, the Clerk of Court will

24   prepare and file a notice of appeal on your behalf.

25             Good luck to you, sir.  I hope this time

1  passes quickly for you. As I say, I hope you're

2  successful in getting on with the rest of your life and

3  building a new life for your family and yourself.

4              Good luck to you.

5              THE DEFENDANT: Thank you.

6              THE COURT:  Thank you, gentlemen. Good to

7  see you all here.  I appreciate your help and input.

8              If there's nothing further, we'll ask the

9  Marshal to declare the Court in recess until return of

10 Court.

11

12

13

14 "I certify that the foregoing is a correct transcript

15 from the record of proceedings in the above-entitled

16 matter.

17

18

19 /s/ Sonia Ferris                    January 31, 2014"

20

21

22

23

24

25